UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>                                     Petitioner,<br><br>v.<br><br>JY HARVESTING, INC., a suspended California corporation; JOSE JESUS PINEDO, an individual, as the Custodian of Records for JY HARVESTING, INC.,<br><br>                                  Respondent. | Case No.:  17-CV-1225-CAB-WVG<br><br>**ORDER GRANTING PETITIONER'S PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA DUCES TECUM**<br><br>**[ECF No. 1]** |

## I. **INTRODUCTION**

Presently before the Court is Petitioner R. Alexander Acosta, Secretary of Labor, United States Department of Labor's ("Petitioner"), Petition to Enforce ("Petition") an administrative subpoena *duces tecum* served on Respondents JY Harvesting, Inc. and Jose Jesus Pinedo as the Custodian of Records for JY Harvesting, Inc. (collectively "Respondents").

For the reasons that follow, Petitioner's motion is **GRANTED**.

/ / /

1

## II. **BACKGROUND**

Petitioner began an administrative investigation of Respondents following a very serious automobile accident that caused multiple serious injuries and the death of a seasonal agricultural worker. (Rios Decl., ECF No. 1-4 at ¶ 5.) On March 15, 2017, a 2002 Chevy Express Van, owned by Respondent Pinedo, was supplied to Fernando Pinedo Garcia, doing business as Healthy Harvesting, to transport seasonal agricultural workers.[1,2] (*Id.*) While traveling, a tire catastrophically failed causing the van to roll numerous times. (*Id.*) The California Highway Patrol referred the accident to the Wage and Hour Division of the United States Department of Labor ("Wage and Hour"). (*Id.*)

On March 16, 2017, Steven Albert Rios, an investigator for Wage and Hour, was assigned to and began investigation of the accident pursuant to the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"), 29 U.S.C. § 1801, *et seq*. (Rios Decl. at ¶ 7.) On March 24, 2017, Ruben J. Rosalez, Regional Administrator of the Western Region of Wage and Hour Division, issued an administrative subpoena *duces tecum*, directing Respondents to provide requested documents on April 3, 2017.[3] (Rosalez Decl., ECF No. 1-3 at ¶ 2-3.) The subpoena was served on Respondents on March 28, 2017. (*Id*. at ¶ 4; Rios Decl. at ¶ 9.) Production of documents was made by Respondents on April 14, 2017. (Rosalez Decl. at ¶ 5; Hernandez Decl., ECF No. 7 at ¶ 4.) On April 24, 2017, Rios and Hernandez engaged in a meet and confer regarding the completeness of Respondents' production. (Rios Decl. at ¶ 14; Hernandez Decl., ECF No. 7 at ¶ 5.) Respondents supplemented their production on May 31, 2017, provided seven additional documents in response to Request No. 3 and asserted that Respondents had no documents responsive to Request Nos. 4 and 6. (Rios Decl. at ¶ 15; Hernandez Decl. at ¶ 5.) This response also

---

[1] Petitioner asserts that Respondent Jose Jesus Pinedo and Fernando Pinedo Garcia, owner of Healthy Harvesting, are related by marriage. (*See* Rios Decl. at ¶ 6.)

[2] The Court notes the facts regarding the accident and vehicle ownership are asserted by Petitioner only. However, Respondents did not dispute the facts in their Response in Opposition.

[3] The date that actually appears on the subpoena is April 3, 2016. Petitioner states this was merely a typographical error and Respondents do not argue this amounts to a procedural error.

included an objection to Request No. 7 based on California Rule of Professional Conduct 2-100. (Hernandez Decl. ¶ 5.)

On June 16, 2017, Petitioner filed a Petition to Enforce Administrative *Duces Tecum*. (Petition, ECF No. 1.) Respondents filed a timely Response in Opposition on July 7, 2017. (Opposition, ECF No. 6.) Petitioner timely filed a Reply. (Reply, ECF No. 10.)

## II. <u>LEGAL STANDARD</u>

The Ninth Circuit Court of Appeals has explained that "[t]he scope of the judicial inquiry in [] any [] agency subpoena enforcement proceeding is quite narrow. The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *E.E.O.C. v. Federal Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (internal quotation omitted). "If these factors are shown by the agency, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." *E.E.O.C. v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc) (overruled on other grounds); *see also U.S. E.E.O.C. v. Ayala AG Services*, 2013 WL 5670901, at *2 (2013 E.D. Cal.).

## IV. <u>DISCUSSION</u>

Petitioner claims that Respondents' responses to Requests Nos. 3, 4, and 6 are deficient. Petitioner also claims that Respondents have lodged an improper objection to Request No. 7.

Respondents do not dispute that Congress has granted Wage and Hour authority to investigate nor do they contend that Petitioner failed to follow the procedural requirements. Respondents also do not claim the evidence sought is irrelevant, overboard, or unduly burdensome. Instead, Respondents argue they have provided all documents responsive to Request No. 3, and have no documents responsive to Request Nos. 4 and 6. Lastly, Respondents argue that Petitioner must agree to comply with California Rule of Professional Conduct 2-100 before responding to Request No. 7 completely.

The Court will discuss each in turn.

**A. Petition's Enforcement**

It is undisputed that Congress has granted the Secretary of the Department of Labor the authority to "investigate" compliance with the MSPA. 29 U.S.C. § 1862(a). In doing so, "[t]he Secretary may issue subpoenas requiring the … production of any evidence in connection with such investigations." 29 U.S.C. § 1862(b). The subpoena was properly issued by a Regional Administrator by delegation of authority from the Secretary, *see* Secretary's Order 5-2010 5(C), 75. Fed. Reg. 55352-55354 (2010), and served on Respondents, (Rosalez Decl. at ¶ 4.) Lastly, Petitioner claims the information sought is highly relevant and material to the investigation. (Pet. at ¶ 19.) Respondent does not dispute this claim. Given this, Petitioner has shown the subpoena should be enforced unless Respondents can show the inquiry is overly broad or unduly burdensome.

**B. Request No. 3**

Request No. 3 seeks:

> All documents regarding all vehicles owned, leased or rented since November 1, 2015 used to transport agricultural workers including registration documents, smog certificates, repair records."

(Rosalez Decl., Ex. 1 at 7.)

Petitioner claims the initial production of documents contained "no documents" responsive to Request No. 3. (Petition, ECF No. 1 at 5 ¶ 14.) Petitioner also claims that Respondents' supplemental production on May 31, 2017, which contained seven invoices, was also deficient. (*Id*. at ¶ 16.) In support of this argument, Petitioner includes invoices received from Fernando Pinedo Garcia, doing business as Healthy Harvesting. (*See* Supp. Garcia Decl., Ex. 8, ECF No. 10-1 at 4-12.) Petitioner claims that because the invoices received from Fernando Pinedo Garcia are different than the invoices received from Respondents, Respondents are either withholding documents or not being diligent in their search for responsive documents. (Reply at 4:1-2.)

Respondents claim they have produced all documents responsive to Request No. 3. (Hernandez Decl. at ¶ 5.) Respondents' counsel indicated to Petitioner via email that, as of

the supplemental production, they "have produced all documents responsive to this request […]." (Hernandez Decl., Ex. C at 2.) Additionally, Respondents have represented to the Court in their Opposition they "have already produced all documents within its custody and possession responsive to [Request No. 3]." (Opp'n. at 2:13-16.) In support of this claim, Respondents attached as an exhibit the documents produced to Petitioner in the initial production, (see Hernandez Decl., Ex. B,) and also attached their supplemental response to Request No. 3, (see *Id.*, Ex. C.)

At the outset, a review of the documents supplied by Respondents shows that Petitioner's claim that there were no documents responsive to Request No. 3 in the initial production is inaccurate. The documents provided in the initial production included numerous vehicle documents, including copies of Certificates of Titles for various vehicles, dozens of pages of insurance documents for various vehicles, one of which is proof of insurance for a 2002 Chevy Express van. (*See* Hernandez Decl., Ex. B at 82.)

Petitioner's assertion that because production from Healthy Harvesting differs from the production made by Respondents, a presumption of incomplete production exists. This argument is unpersuasive. First, Petitioner provides no authority supporting such a presumption. Second, while it is *possible* that Respondents have the same invoices that were produced by Healthy Harvesting, it is equally possible that Respondents simply no longer have the invoices in question. Perhaps Respondents sent the only copy of the invoices to Healthy Harvesting or perhaps Respondents simply do not maintain complete records due to the alleged familial relationship between the companies' respective owners.

Respondents have plainly asserted to Petitioner and to the Court that no further documents exist that are responsive to Request No. 3. The Court cannot compel production of that which does not exist or is not in the possession and control of Respondents. Numerous federal courts dealing with various cases in discovery or discovery-like proceedings have held as much. *See*, *e.g.*, *Lamon v. Adams*, 2015 WL 1879606, at * 3 (E.D. Cal. 2015) (pursuant to the Federal Rules of Civil Procedure, a court cannot compel production of documents that do not exist); *Cormack v. United States*, 117 Fed Cl. 392,

408 (Fed. Cl. 2014) (court of federal claims "cannot compel [a party] to produce documents that it insists do not exist"); *Alexander v. F.B.I.*, 194 F.R.D. 305, 310 (D.D.C. 2010) (same); *In re Wright*, 2005 WL 6488101, at *6 (Bnkr. N.D. Ga. (2005) (a bankruptcy court may only compel the production of things in existence); *see also* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994) ("[A] party can not be required to permit inspection of documents or things that it does not have and does not control."). While the Court is aware these cases deal with issues outside the purview of an administrative subpoena, the logic is equally applicable here and Petitioner offers no authority to the contrary.

Notwithstanding the above analysis, the Court must grant the Petition in light of the minimal requirements for the enforcement of administrative subpoenas and Respondents' failure to satisfy their burden.

### C. Request Nos. 4 and 6

Request No. 4 seeks:

> All communications including text messages, emails, letters, and other writings with Healthy Harvest, Fernando Pinedo Garcia or his family regarding transportation of Healthy Harvest workers since November 1, 2015.

(Rosalez Decl., Ex. 1 at 7.)

Request No. 6 seeks:

> All communications, including emails, texts and documents, referencing any lease, rental agreement or understanding between you and Healthy Harvesting regarding vehicles used to transport workers to Fisher Ranch since November 1, 2015, including the transport of workers in the 2002 Chevy Express Van on March 15, 2017.

(*Id.*)

Petitioner claims no responsive documents were received for these requests during the initial production, which occurred on April 14, 2017. (Pet. at ¶ 14.) Petitioner asserts the records responsive to Request Nos. 4 and 6 are "relevant and necessary" to the

investigation, (*id*. at ¶ 19,) and "will aid and assist" the on-going investigation of Respondents, (*id*. at ¶ 20.) Without the records and documents, Wage and Hour "cannot complete a thorough investigation" of Respondents, the incident at issue, and other possible violations of MSPA. (*Id*. at ¶ 21.) Additionally, Petitioner claims it is simply "not credible" that Respondents have no documents responsive to Request Nos. 4 and 6 because of evidence showing $671,126 in transactions between Respondents and Healthy Harvesting. (Reply at 4:7-22.)

Respondents "unambiguously" represent that no documents exist that are responsive to Request Nos. 4 and 6. (Opp'n. at 2:14-16.)

The analysis to these Requests is nearly identical to Request No. 3: the Court cannot compel that which a party asserts it does not possess. Moreover, Petitioner's claim that it is "not credible" that Respondents do not possess any responsive documents despite the reporting of nearly $700,000 worth of transactions between Respondents and Healthy Harvesting is, again, unpersuasive. Petitioner's assertion rests solely on the invoices provided by Respondents and those provided by Healthy Harvesting. As an example, an invoice provided by Petitioner shows Respondent JY Harvesting billed Healthy Harvesting for 11 trailers, 10 buses, 5 dollies, 9 tractors, and 650 gallons of diesel. (Supp. Garcia Decl., Ex. 8 at 5.) However, nowhere on this invoice does it indicate any of the items billed were "regarding transportation of Healthy Harvest workers" as requested in Request No. 4. Additionally, nowhere on this invoice does it indicate any of the items billed were "regarding vehicles used to transport workers to Fisher Ranch" as requested by Request No. 6. Each invoice provided by Petitioner and Respondents lacks the same critical information of which Petitioner relies. Given this, these invoices provide little evidence at best. At worst, the invoices provide no evidence supporting the assertion that documents exist that are responsive to Request Nos. 4 and 6.

Notwithstanding the above analysis, the Court must grant the Petition in light of the minimal requirements for the enforcement of administrative subpoenas and Respondents' failure to satisfy their burden.

**D. Request No. 7**

Request No. 7 seeks:

> Documents sufficient to identify all persons who work as crew leaders, foremen or supervisors by name, address, telephone number and job duties.

(Rosalez Decl., Ex. 1 at 7.)

Petitioner asserts that Respondents would only produce documents responsive to this request on the condition that "DOL, or any of its agents, agree to refrain from having any communication with its supervisory personnel without the presence of counsel." (Pet. at ¶ 17.) Petitioner argues this is an improper objection to an administrative subpoena.

Respondents objected to the production of contact information of its supervisors and foreman, during a meet and confer that occurred on April 24, 2017. (Opp'n. at 4:21-24; *see also* Hernandez Decl. ¶ 5.) Respondents concede they have "yet to produce any documents responsive to" Request No. 7 with the exception of a list of foreman and supervisors employed during the 2016 season. (Opp'n at 2:19-22.) Respondents contend they are willing to produce responsive documents on the condition that Petitioner comply with California Rule of Professional Conduct 2-100. (*Id*. at 2:23-25.)

California Rule of Professional Conduct 2-100 states that, absent consent from opposing counsel, "[w]hile representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter []. Cal. Prof. Conduct R. 2-100(A). A "member" is a "member[] of the State Bar…" Cal. Prof. Conduct R. 1-100(A).

Respondents' reliance on California Rule of Professional Conduct 2-100 is misplaced. First, and most importantly, Respondents' objection to production based on the Conduct Rule does not fall within the narrow scope of objections permitted for administrative subpoenas. For this reason alone, the Court would overrule Respondents' objection.

However, Respondent's objection is also overruled on ripeness grounds. Petitioner's

Request No. 7 seeks only identification and contact information for crew leaders, foremen, or supervisors, and not to depose or otherwise interview those listed. While such contact may be a logical step in the future, it is not an issue at the present time. Given this, the Court would also overrule Respondents' objection as it is not yet ripe.

For the foregoing reasons, Respondents' objection to Request No. 7 is **OVERRULED**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

9

# V. <u>CONCLUSION</u>

Since Respondents do not contest the authority of Petitioner, do not claim Petitioner failed to follow the procedural requirements, do not claim the evidence sought is irrelevant, overboard, or unduly burdensome, the Court **ORDERS** as follows:

1. Respondents' objection to Request No. 7 is **OVERRULED**.

2. Petitioner's application for an order to enforce the subpoena issued is **GRANTED**.

3. Respondents are **ORDERED** to produce any outstanding documents requested in Petitioner's subpoena *duces tecum* at the Wage and Hour Division, United States Department of Labor, 550 West C Street, Suite 990, San Diego, California, on or before **<u>August 25, 2017</u>**.

4. If Respondents are unable to provide any of the documents and information set forth in the subpoena, Respondents shall submit a declaration under penalty of perjury that: (1) such documents and information do not exist or are not within respondent's custody, possession or control; (2) a diligent search was conducted, and describe in sufficient detail the processes that were taken, in an attempt to locate responsive documents; and (3) that no documents were destroyed in anticipation of the present investigation.

5. Respondents are cautioned that failure to comply with this order may result in the issuance of sanctions including contempt sanctions.

**IT IS SO ORDERED**.

Dated: August 10, 2017

_____
Hon. William V. Gallo
United States Magistrate Judge

17-CV-1225-CAB-WVG